DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

STATE OF NEW-JERSEY,

AT APRIL TERM, 1851.

---

## VAN VALKENBERGH AND OSBORN v. DEN EX DEM. RAHWAY BANK.

1. After a contract of sale of land, and part payment, judgments were obtained, and executions issued against the vendor, under which, by sheriff's sale, the title passed to the lessor of the plaintiff. Ejectment being brought against the vendees in possession under a contract which had thus failed, *held*, that they were not entitled to notice to quit, but that the plaintiff was entitled to recover on proof of demand of possession merely.

2. The act of March 1, 1849, authorizing a party to be called as a witness by the adverse party, applies to suits brought to trial after the act went into effect.

---

In error to Essex Circuit Court.

This action was instituted by the lessor of the plaintiff against Van Valkenbergh and Osborn, defendants below, in Essex Circuit Court, to recover possession of a paper mill and lands in the county of Essex. The declaration in ejectment was returned to the term of May, 1849, and the cause tried before said Circuit Court in the term of August, 1850. The action was founded upon a deed, given by the sheriff of the

583

county of Essex to the said Rahway Bank, dated April 27, 1849, and the premises therein mentioned were sold by said sheriff, and purchased by said bank, as the property of Ezra Drake, by virtue of several judgments and executions against Drake, as follows: One in favor of the State Bank at New Brunswick, November 28, 1848, for $548.99 damages, besides costs; one in favor of said New Brunswick Bank against Ezra Drake and Joseph M. Osborn, November 28, 1848, for $405.78 damages, besides costs; one in favor of the said Rahway Bank for $2257.22 of debt, and four dollars costs, signed December 8, 1848; and the last in favor of said Rahway Bank, December 9, 1848, for $1565.82 of debt, and four dollars costs. The two last named judgments were against Ezra Drake, and entered by confession. The record of said several judgments, and the executions issued thereon, together with said deed of the sheriff, were offered in evidence on the part of the lessees of the plaintiff, in support of their action, and admitted as evidence.

The defendants, on their part, produced and proved a written article of agreement, dated August 26, 1848, between the said Van Valkenbergh and Osborn and Ezra Drake.

The defendants also proved that they were in the possession of said premises mentioned in the agreement, and claimed by the lessors of the plaintiff at the time of the date of said agreement, and by virtue thereof continued in possession of said premises until the trial of said cause; and they, the said defendants, had complied, or offered to comply, with said agreement on their part.

The lessors of the plaintiff, on their part, offered Stephen Van Valkenbergh, one of the defendants, as a witness, to prove by him that a demand of possession of said premises was made by them on the defendants prior to the commencement of their action. The defendant, though objection was made, was sworn. The defendants excepted.

The court charged the jury as follows:

This action is brought by the Bank of Rahway to recover possession of three several lots, or parcels of land, in Westfield and New Providence. As to two of the tracts, there is no dis-

pute; the only controversy relates to the tract of twenty-eight acres, known as the mill tract.

The plaintiffs, in support of their right to recover possession, show a clear legal title to the land. They show a title to the premises in Ezra Drake, judgments and executions against Drake, by virtue of which the premises in dispute were levied upon, a sale by virtue of these executions, and a deed in pursuance of the sale from the sheriff to the bank.

To defeat the plaintiff's right of recovery, the defendants must show either a better legal title, or that the plaintiffs, although they have the legal title, have, from some cause, no right to the possession of the premises.

In regard to the legal title, there seems to be no dispute. The defendants set up no legal title in themselves to the premises, nor do they deny or attempt to impeach the legal title of the plaintiffs.

The defence is, that previous to the recovery of the judgments against Ezra Drake, by virtue of which the land in question was sold, the defendants entered into a written agreement with Drake to become the purchasers; that, by virtue of that agreement, they entered into possession of the premises, and, being so lawfully in possession, they are to be regarded as tenants, and cannot be ejected as trespassers without being served with notice to quit, or at least without a demand of possession.

It is not material to the defence that the defendants have paid part of the purchase money upon their agreement with Drake, or that they are in equity entitled to a conveyance from Drake by virtue of their agreement. These are mere equitable rights, which must be decided in a court of equity; they do not constitute a legal defence in this action, where legal rights alone are in controversy.

The defendants, being in possession of the premises under a contract for purchase, are not to be regarded as tenants, nor the plaintiffs as landlords, in such sense as to entitle the defendants to three months' notice to quit; but the defendants, being lawfully in possession under their contract for purchase,

cannot be treated as trespassers, and ejected from their possession without a demand of possession first being made.

The question of fact for the jury to decide is, whether, upon the evidence in the cause, there was such demand of possession. No precise form of demand is necessary. The question is, were the defendants given to understand by the demand of the key of the mill, made by the president of the bank, that the bank demanded possession of the premises prior to the commencement of this action ?

If, upon the evidence, you are satisfied that such demand of possession was made, you will find for the plaintiffs as to all the premises ; but if such demand was not made, you will find for the defendants as to the twenty-eight acres, and for the plaintiffs as to the residue.

The defendants excepted to so much of this charge as directed that the defendants, though in possession under a contract to purchase, yet were not entitled to notice to quit.

The jury rendered a verdict of guilty.

*W. Pennington*, for plaintiffs in error, urged—

1. That the defendants below were tenants at will, and as such entitled to a formal notice to quit. He cited 4 *Kent* 110 ; *Den* v. *Drake*, 2 *Green* 523, 531 ; 9 *John.* 267 ; 11 *Wend.* 442.

2. That the judge below erred in allowing the lessor of the plaintiff to examine one of the defendants as a witness, under the act of March 1, 1849. That the act was not intended to operate on suits brought before it went into effect. Besides, that the action depended upon, and was the result of a contract made prior to July 4, 1849.

*F. B. Chetwood*, contra, cited 3 *Green* 371; 13 *East* 210; *Arch. Land. and Ten.* 67 ; *Law Lib.* 1846 ; 3 *John.* 422; 17 *Ib.* 158.

CARPENTER, J., delivered the opinion of the court.

But two reasons assigned for error have been urged upon the argument. The first, and that chiefly relied on, is upon an exception to the charge of the court. Contrary to the charge,

it is urged, that notice to quit was necessary in order to support the action, the defendants being in possession under a contract to purchase.

The question thus raised can hardly be considered as an open one at the present day. If a party be let into possession under such contract, and the sale be not afterwards completed, he holds strictly at the will of the vendor, unless there be something in the contract of sale to the contrary. *Arch. Law of Land. and Ten.* 67.

But, strictly speaking, the relation of landlord and tenant does not exist simply because a person has entered upon land under a contract to purchase. Hence it has been held in this state, that no action for use and occupation would lie, the contract having failed in the case referred to by the death of the vendor before completion. *Brewer* v. *Conover*, 3 *Harr.* 215.

So in a late case in England, where the vendee of an estate, sold at auction, had been suffered to enter to hold the premises while the title was under investigation, and the contract had afterwards been determined for want of title. It was held that the vendor could not, on these grounds only, recover for use and occupation, although the jury found that the occupation had been beneficial, the relation of landlord and tenant not having been contemplated between the parties. The defendant went into possession as purchaser, and the plaintiff could not convert him into an occupier liable to pay for his occupation, when he failed to complete his contract of purchase. *Winterbottom* v. *Ingham*, 7 *Q. B.* 611.

These cases seem to involve a principle not at all depending for its application on the fact, that the contract went off without any default upon the vendee. It is, that though there is ownership on the one side, and occupation by permission on the other, still use and occupation will not lie, if the occupation be given, taken, and kept under such circumstances as show that no contract of tenancy was in contemplation between the parties.

In *Saunders* v. *Musgrave*, 6 *B. & C.* 524, a tenancy was held to exist, but it was upon the strength of a stipulation in

the contract of sale, that until completed, rent at a given rate should be paid.

In *Doe* v. *Chamberlaine* 5 *M. & W.* 14, where the stipulation was to pay at the rate of five per cent. per annum on the purchase money until the completion of the purchase, which was to be in three months, the purchase was not completed, and the vendee continued in possession. It was held that he was in strictly at the will of the vendor, and that ejectment would lie without notice to quit.

If not subject to the liabilities of tenants, there would be little fairness that vendees should be permitted to hold against vendors as tenants.

In our own state, in a case cited on the argument, it was held, that when a vendee under a contract of sale had been let into possession, and had leased a part of the premises to another, and the contract had then gone off, that ejectment could not be maintained, either against the vendee or his tenant, who was also a defendant, without a previous demand of possession. *Den* v. *Westbrook*, 3 *Green* 371.

*Right* v. *Beard*, 13 *East* 210, sustains the point so ruled, though in some of the cases it has been held that not even a demand of possession is necessary when the contract has gone off by the default of the vendee. The lessor of the plaintiff, it has been said, after he has put the defendant in possession, cannot, without a demand of possession, or some wrongful act by the defendant to determine his possession, treat him as a wrongdoer and trespasser, as he assumes to do by the declaration in ejectment. But it was held, as well in *Den* v. *Westbrook* as in other cases, that there is no such relation of landlord and tenant subsisting between the vendor and the vendee, not even by construction, as will entitle the latter to a notice to quit. The point is well settled, and the only semblance of authority to the contrary which has come under our notice is the *dictum* of Chief Justice Hornblower, in *Den* v. *Drake*, 2 *Green* 531, which was not necessary to the decision of that case, and is in fact overruled by the deliberate decision of the same learned judge in *Den* v. *Westbrook*, before cited.

We think, therefore, that the jury were rightly charged, that

Van Valkenbergh et al. v. Den ex dem. Rahway Bank.

no notice to quit was necessary, and that the lessor of the plaintiff was entitled to recover on proof merely of a demand of possession before action brought. Any equitable rights of the defendants, in consequence of a part of the purchase money having been paid, constituted no legal defence, and did not change the aspect of the case, as presented to the jury. The legal rights of the parties are alone involved in the present controversy.

It is assigned for error, that the court allowed the lessor of the plaintiff, who was otherwise unable to prove demand of possession, to examine one of the defendants as a witness. He was called by the plaintiff under the supposed sanction of the act, passed March 1, 1849, *Pamph. L.* 264.

This action was commenced in May, 1849, and the act did not go into effect until the fourth day of July of the same year, and it is insisted that, therefore, the act did not apply. But the act in express words enacts, that in all civil actions, &c., " the parties shall *hereafter* be admitted and sworn, &c., when called as witnesses by the adverse party," and neither expressly nor impliedly limits such power to suits commenced after the act should go into operation. Again, it is a proviso of the act, that it shall not extend to any action brought upon a contract made before the fourth of July then next, and it is insisted that this action came within the proviso. It is a sufficient answer to say that this action was not brought upon any contract. The plaintiff claims simply under his legal title, entirely independent of any contract.

We are all of opinion that the judgment must be affirmed.

*For affirmance*—The CHANCELLOR, and Judges NEVIUS, CARPENTER, PORTER, SCHENCK, CORNELISON, RISLEY, OGDEN, VALENTINE, and WILLS—10.

*For reversal*—None.

The CHIEF JUSTICE, before whom the cause was tried, and RANDOLPH, J., absent, expressed no opinion